# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 19-312V
UNPUBLISHED

---

LARRY LEMMONDS,

                    Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

                    Respondent.

---

Chief Special Master Corcoran

Filed: February 13, 2020


Special Processing Unit (SPU);
Attorney's Fees and Costs;
Reasonable Basis

---

*Jeffrey S. Pop, Jeffrey S. Pop & Associates, Beverly Hills, CA,* for petitioner.

*Julia Marter Collison, U.S. Department of Justice, Washington, DC,* for respondent.


### DECISION AWARDING ATTORNEY'S FEES AND COSTS[1]

On February 27, 2019, Larry Lemmonds filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program")[2] (ECF No. 1), alleging that he suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of his November 16, 2016 influenza ("flu") vaccination administered in his right deltoid.

Less than six months later, Petitioner moved on July 16, 2019 for a decision dismissing his case after obtaining a previously unavailable vaccine administration record indicating that his November 16, 2016 flu vaccination was administered in his *left* deltoid,

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

not his right.[3] Former Chief Special Master Dorsey accordingly issued a Decision dismissing this case on July 19, 2019. (ECF No. 15).

After the dismissal, Petitioner filed a motion for attorney's fees and costs on September 6, 2019, seeking fees in the amount of $8,175.60 and costs in the amount of $691.23, for a total requested award of $8,866.83. (ECF No. 19 at 5).  Respondent filed his response reacting to Petitioner's Motion on September 13, 2019 and arguing therein that Petitioner was not entitled to an award of attorney's fees and costs because the claim lacked reasonable basis (since objective evidence did not support the claim). (ECF No. 20 at 1). On September 20, 2019, Petitioner filed a Reply to Respondent's Response to Petitioner's Motion. (ECF No. 21).[4]

As discussed below, I **GRANT** Petitioner's motion for fees and costs. A reasonable basis for the claim existed at the time the Petition was filed, through the date of dismissal, based upon the objective evidence available at the time.

## I.    Factual and procedural history

This case was initially assigned to former Chief Special Master Dorsey as part of the Special Processing Unit ("SPU") (ECF No. 5).[5] The Petition alleged that Mr. Lemmonds "developed severe right shoulder pain" that begin "immediately" after the administration of the flu vaccine in his right deltoid on November 16, 2016, and as a result Petitioner suffers from the Table injury of SIRVA (or alternatively a non-Table, caused-in-fact injury). (ECF No. 1 at *Preamble*).

The Petition was upfront about the then-existing objective evidence relevant to certain of its core allegations. Thus, Mr. Lemmonds's claim forthrightly acknowledged that Petitioner received *both* the Pneumovax 23 and flu vaccines on November 16, 2016. (ECF No. 1 at ¶ 5). But the claim could only rely on Petitioner's recollection that it was the covered flu vaccine that was administered in the right shoulder – the situs of his alleged injury. *Id.* at ¶ 5. As the Petition disclosed, the vaccine provider and administrator, Kaiser

---

[3] The vaccine administration record identified Petitioner's left arm as the site of administration for the polysaccharide vaccine, Pneumovax - not a vaccine covered by the Program. *See* National Vaccine Injury Compensation Program: Addition of Pneumococcal Conjugate Vaccines to the Vaccine Injury Table, 66 Fed. Reg. 28166 (May 22, 2001) ("[t]hrough this notice, pneumococcal conjugate vaccines are now included as covered vaccines under Category XIII of the Table. Because the CDC only recommended pneumococcal conjugate vaccines to the Secretary for routine administration to children, polysaccharide-type pneumococcal vaccines are not covered under the VICP or included on the Table.").

[4] Petitioner requests an additional $2,168.00 for fees related to his Reply brief.  (ECF No. 21 at 8).

[5] On October 1, 2019, I assumed the role of Chief Special Master, and therefore this case was reassigned to me.

Permanente ("Kaiser"), was not able to produce a vaccine administration record documenting in which shoulder each vaccination was administered. *Id.*

Less than two weeks after the claim's initiation, on March 7, 2019, Petitioner filed the declaration and medical records cited and relied upon in his Petition. (ECF No. 6). Consistent with the Petition's allegations, the Kaiser vaccination record documented that Mr. Lemmonds had received the flu and Pneumovax 23 vaccinations on November 16, 2016, but did not record in which arm he received either. Ex. 2 at 1. Petitioner also obtained and filed a letter from Kaiser (in response to his counsel's outstanding request) stating that Kaiser could not determine in which arm the covered flu vaccine had been received. *Id.* at 2. But in his sworn declaration (dated February 18, 2019), Petitioner recalled that he had received his flu vaccine in his right shoulder.[6] Ex. 1 at ¶5 (ECF No. 6-1).

Petitioner's medical treatment records corroborated his recollection that he had received the flu vaccine in his injured right shoulder. Thus, on January 11, 2017, Petitioner emailed his primary care provider at Kaiser complaining that he was "still having pain in my arm where I got the flu shot back in November. . . . My arm was never red or feverish but hurt from the beginning." Ex. 4 at 1. Then, on March 10, 2017, Petitioner was seen for right shoulder pain, and the treatment record again associated the pain with a flu vaccine received in that shouler. Ex. 3 at 298-99. Other documents were consistent in this regard, and also confirmed that he had experienced right shoulder pain generally. *See, e.g.*, Ex. 5 (Petitioner's physical therapy records); Ex. 6 at 19.

On May 15, 2019, an initial status conference was convened in this case, at which time it was observed that the filed records did not document the situs of administration of the flu vaccine. (ECF No. 9).  Although, Petitioner's counsel had already requested such records (and, as noted above, had filed a letter from Kaiser indicating the provider did not have this information), he was urged to consider subpoenaing the documents anyway (as it is often the case that such efforts cause previously-unproduced documents to surface). As a result, on June 25, 2019, Petitioner filed an unopposed motion for an Order approving the issuance of a subpoena to be served on the Kaiser Permanente Snellville Medical Office for the purpose of obtaining Petitioner's complete vaccine administration records to include the site of the vaccine administration for Petitioner's November 16, 2016 vaccinations. (ECF No. 10).  The motion was granted on June 27, 2019.  (ECF No. 11).

---

[6] As the Declaration specifically states:

> On November 16, 2016, I got the flu shot and the pneumonia shot at my annual physical appointment. I remember getting the flu shot in my right shoulder and the pneumonia shot in my left shoulder. I remember that the nurse told me I had to have a pneumonia shot. Since I am right handed I told her give me the pneumonia shot in my left shoulder. Then the nurse told me that I also needed a flu shot. She gave it to me in my right shoulder since I already had the pneumonia shot in my left shoulder. [Ex. 2, Vaccination Record].

Ex. 1 at ¶5.

On July 15, 2017, Petitioner filed additional records as Exhibit 7 from Kaiser to include an additional vaccine administration record. (ECF No. 12). But these records documented (for the first time) that Petitioner's November 16, 2016 flu vaccination was in fact administered intramuscularly in his *left* deltoid, with the non-covered vaccine being the one administered in the right.  Ex. 7 at 4. As a result, Petitioner filed a Status Report that same date indicating that in light of this newly-obtained evidence he would move to dismiss his Petition (ECF No. 13), and he did so the following day (July 16, 2017) (ECF No. 14). The claim was accordingly dismissed.

## II.    The Parties' Arguments

Respondent argues that Petitioner has not met the burden of affirmatively demonstrating reasonable basis – mainly because the claim was filed before the situs of administration of the covered vaccine had been established. (ECF No. 20 at 6). In response, Petitioner maintains that at the time his Petition was filed the available objective evidence *did* support the conclusion that he received a covered vaccine (an undisputed issue) in his injured arm, and (as the Kaiser letter established) did not contradict his recollection - and thus provided a reasonable basis for his claim.  (ECF No.  21 at 7).

## III.    Analysis

### a.  Reasonable Basis Standard

Under the Vaccine Act, an unsuccessful petitioner may be awarded attorney's fees and costs if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." § 15(e)(1). While petitioners are entitled to a presumption of good faith, this presumption does not extend to reasonable basis, which must be affirmatively demonstrated by the petitioner through reference to objective evidence. *Chuisano v. Sec'y of Health & Human Servs.,* 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Human Servs.,* 101 Fed. Cl. 297, 303 (2011)); *see also Amankwaa v. Sec'y of Health & Human Servs.,* 138 Fed. Cl. 282, 290 (2018) ("[S]pecial masters must not consider subjective factors in determining whether a claim has reasonable basis."); *Santacroce v. Sec'y of Health & Human Servs.,* No. 15-555V, 2018 WL 405121, at \*7 (Fed. Cl. Jan. 5, 2018) ("[T]he Special Master should have limited her review to the claim alleged in the petition to determine if it was feasible based on the materials submitted.").

 The standard for reasonable basis is lesser (and inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases with reasonable basis (because they have objective proof supporting the claim) can nevertheless still fail to establish causation-in-fact. *Braun v. Sec'y of Health & Human Servs.,* 144 Fed. Cl. 72, 77-78 (Fed. Cl. 2019). The existence of an impending statute of limitations deadline has been removed from consideration under the "totality of the circumstances" analysis, as it does not constitute an objective factor relevant to the claim's underlying validity. *Simmons v. Sec'y of Health & Human Servs.,* 875 F.3d 632, 636 (Fed. Cir. 2017).

### b. *Petitioner's Claim Possessed Reasonable Basis Up to Dismissal*

The parties do not contest that this claim lacked a sufficient evidentiary basis to proceed *after* Petitioner obtained the new evidence (pursuant to a court-authorized subpoena) that it was the non-covered, Pneumovax 23 vaccine that was administered in his right injured shoulder. This newly-produced evidence was the reason Petitioner himself sought a decision dismissing his Petition.  Therefore, the issue posed by the present fee motion is whether there was enough objective evidence *before* this fact issue was determined to find that Petitioner's claim had reasonable basis.[7]   I find that there was.

It is well-understood in the Vaccine Program that cases can be initiated with sufficient reasonable basis, but subsequently "lose" it as evidence is adduced relevant to the claim. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 33 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).  This is just such a case. At the time of filing, Petitioner was able to substantiate (a) that he had received a covered vaccine, and (b) that he experienced a SIRVA-like injury in the shoulder in which he believed he had received that vaccine.[8]   He relied on his recollection to substantiate the situs of administration of the flu vaccine – unquestionably insufficient grounds upon which to prevail. But that recollection was *not* controverted by Kaiser – whom Petitioner's counsel unquestionably reached out to in order to confirm the accuracy of that recollection. (ECF No. 21 at 2). It was therefore reasonable for Petitioner to proceed with the claim even though the issue had not been fully resolved – indeed, it might never have been so resolved.

---

[7] Respondent does not challenge that this case was filed in good faith, and I find that there is no question the case was filed in good faith.

[8] The QAI for the Table Injury of SIRVA indicates that

> A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
> (ii) Pain occurs within the specified time-frame [48 hours];
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

Relevant to the above is something that Petitioner correctly points out: numerous cases involving an alleged Table shoulder injury following vaccination have resulted in awards of compensation *despite* the fact that the vaccine administration record was *silent* as to the site of the vaccine administration. (ECF No. 21 at 4).[9]  Petitioner's counsel cites to 15 such cases that he has settled in the Vaccine Program. *Id.* at 4, fn. 1 (citations omitted). In such cases, Petitioners often corroborate their allegations by reference to subsequent medical records (in which the claimant will tell treaters of the situs of injury). While the situs of vaccine administration is highly relevant to such a claim, and (where both covered and non-covered vaccines have been administered around the same time) can be a dispositive factor in a claim's prosecution, it is not always a factor that can be conclusively determined at all – let alone at the case's outset.

Because of the above, I find that Petitioner possessed sufficient reasonable basis to file the case based upon the then-available objective evidence. Petitioner, through his counsel, undertook an extensive pre-filing investigation that indicated no reason the case could not be filed (and that same inquiry produced reliable evidence suggesting situs of vaccination could not be determined).[10]  Moreover, once it became apparent that Petitioner's claim could not be supported in light of newly identified evidence and thus would not have a reasonable basis to proceed, Petitioner sought dismissal. This is therefore the sort of case where reasonable basis was lost mid-stream – entitling counsel to payment for his work to that point.[11]

---

[9] I do, however, agree with Respondent that this case is not analogous to cases compensated in the Program in which petitioners received both a covered and a non-covered vaccination in the *same* arm.  (ECF No. 20 at 4-5).

[10] This case might have had a different result if Petitioner and his counsel had merely filed his Petition without seeking additional information from Kaiser on multiple occasions in regard to the site of his vaccinations. It is thus distinct from the circumstance where the vaccine administration record, *filed with the Petition*, provides objective evidence that the case was deficient. *See,* e.g., *Gomez v. Sec'y of Health & Human Servs.,* No. 17-1800V, 2019 WL 7480769, at *5 (Fed. Cl. Dec. 6, 2019). In *Gomez*, a petitioner incorrectly recalled the date of a vaccine's administration, repeating that date in error to treaters. Petitioner in that case hoped a subpoena served after filing the Petition would provide additional vaccine administration records to corroborate his recollection - and demonstrate in particular that the case was timely filed. But the vaccine record Petitioner had at the time of filing was inconsistent with his recollection, as subsequent records confirmed. *Gomez,* 2019 WL 7480769, at *2, 5-6. Here, by contrast, Mr. Lemmonds did not possess a record establishing situs – and his counsel's efforts to obtain such records resulted in correspondence suggesting that the situs issue could not be resolved.

[11] Arguably, even *after* obtaining confirmation about vaccine situs, Petitioner could have proceeded with the claim. Petitioners have often attempted to controvert a medical record establishing situs with other evidence, in an effort to prove the record is wrong. *See,* e.g., *Capra v. Sec'y of Health & Human Servs.*, No. 18-129V, 2019 WL 3717951 (Fed. Cl. Spec. Mstr.  Apr. 26, 2019).  A claim is thus not automatically rendered objectively inert simply under such circumstances.

## IV.     CALCULATION OF PETITIONER'S FEES AND COSTS AWARD

Having determined that a fees award is appropriate, I must now evaluate what a reasonable award would be. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008); Section 15(e)(1).   I find that the rates requested by the attorneys herein are consistent with what they have received in other Program cases (based upon the Office of Special Masters's rate schedule for in-forum attorneys).[12] Additionally, the work performed on this matter was reasonable. I therefore award in full the requested attorney's fees. I also find that the costs requested for fees associated with filing the Petition are reasonable.

## V.     CONCLUSION

Accordingly, I hereby award final attorney's fees and costs in the total sum of $11,034.83, in a check payable to Petitioner and Jeffrey S. Pop, Esq. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[13]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[12] The in-forum hourly rate fees schedules are available at http://www.uscfc.uscourts.gov/node/2914.

[13]  Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).